IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ALBERT JAMES BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 03-426-SLR |
| | ) | |
| DAVE WILLIAMS, RAPHAEL WILLIAMS, | ) | |
| et. al., | ) | |
| | ) | |
| Defendants. | ) | |

Albert James Brown, Howard R. Young Correctional Institution, Wilmington, Delaware.  Pro se Plaintiff.

Eileen Kelly, Deputy Attorney General, State of Delaware Department of Justice, Wilmington, Delaware.  Counsel for State Defendants.

**MEMORANDUM OPINION**

Dated:  November 21, 2005
Wilmington, Delaware

ROBINSON, Chief Judge

## I.    INTRODUCTION

On December 1, 2003, Albert James Brown, a pro se plaintiff

proceeding in forma pauperis ("plaintiff"), filed the present

action pursuant to 42 U.S.C. § 1983, alleging infringement of his

constitutional rights by Dave Williams and Raphael Williams

("State defendants").[1]  (D.I. 8)  Plaintiff asserts four claims,

all of which arise under the Eighth and Fourteenth Amendments.

Plaintiff requests:  declaratory judgment averring that state

defendants violated his constitutional rights; injunctive relief

preventing any retaliatory action; and compensatory and punitive

damages.  (Id. at 16)  State defendants deny liability based on

the doctrine of respondeat superior.  (D.I. 42 at 5)  The court

has jurisdiction over the present suit pursuant to 28 U.S.C §

1331.  Presently before the court is State defendants' motion for

summary judgment.[2]  The court grants State defendants' summary

---

[1]At the time of plaintiff's complaint, both Dave Williams
and Raphael Williams were employed at the Howard R. Young
Correctional Institution - Dave Williams as the Security
Superintendent and Raphael Williams as the Warden.  (D.I. 8 at 2)
Plaintiff has also alleged Eighth Amendment violations by
Courtney Porstman, Courtney A., Diana Hernandez, Doctor Alvin,
Doctor Ali, Doctor Jane Doe #1, and Doctor Jane Doe #2 ("medical
defendants"), claiming inadequate medical care.  (Id. at 13)
State defendants, however, are the only defendants who have moved
for summary judgment.  (D.I. 41)  Consequently, this opinion will
only focus on the claims against State defendants.

[2] State defendants originally filed their motion for summary
judgment on April 19, 2005.  (D.I. 41)  Although a briefing
schedule for the above motion was established on June 3, 2005
(D.I. 43), the order was subsequently altered when plaintiff's
motion for an extension of time was granted on June 28, 2005.

judgment motion based on the doctrine of respondeat superior. Alternatively, the court finds that plaintiff failed to prove his Eighth Amendment claims stemming from inadequate medical care and prison conditions of confinement.

## II. BACKGROUND

On May 23, 2002, plaintiff was arrested and subsequently admitted to the Howard R. Young Correctional Institution ("HRYCI") in Wilmington, Delaware,[3] where he has remained at all times relevant to this action. (Id. at ¶ 1) Plaintiff claims that upon arrival at the institution, he immediately sought medical treatment for pain in his head and right leg[4] and, despite his compliance with prison procedure,[5] he was not seen in a timely fashion by the medical staff. (Id. at ¶ 4) Notwithstanding initial inconsistencies with the date of his first medical request,[6] the record indicates that plaintiff

(D.I. 45) Accordingly, plaintiff was given a sixty day extension which required him to file his answering brief by September 6, 2005. (Id.) The court has yet to receive plaintiff's answer.

[3] HRYCI is also known as Gander Hill.

[4] Plaintiff alleges that on the night of his arrest, he was the victim of police brutality, assault, and battery. (D.I. 8 at 1) While the incident is related to the case at hand, plaintiff has filed a separate complaint asserting these claims in Civ. No. 03-404-SLR.

[5] Prison procedure requires inmates seeking medical treatment to fill out a sick call slip. (D.I. 8 at ¶ 2)

[6] The medical intake form supplied by the plaintiff indicates that, at the time of his arrival, he denied that he was

frequently requested medical services and was seen by medical
staff from June 25, 2002 through July 23, 2004. (D.I. 22, ex. F
at 1-97; D.I. 24, ex. at 3, 6-25) Plaintiff, nonetheless,
contends that he was not provided with adequate care "when
defendants knowingly and willfully withheld medication to
alleviate pain and stress, and when defendants failed to comply
with a doctor's order to have plaintiff tested and examined to
determine the full extent of his injuries." (D.I. 8 at 13)
Plaintiff further alleges that such actions amounted to
deliberate indifference on the part of the State defendants in
light of their responsibilities of overseeing the medical staff
workers and for providing inmates with medical care. (D.I. 28 at
¶ 3-4)

Plaintiff also contends that on February 25, 2003, while
washing his clothes in the sink, the water turned his sock "brown
and blu[ish] green." (D.I. 8 at ¶7) Accordingly, he filed a
grievance but was subsequently notified on March 3, 2003 by the
Inmate Grievance Chairperson that his "[g]rievance is
unacceptable because it has passed the seven (7) day time frame
allotted to file a grievance." (D.I. 29 at 18) On March 12,
2003, plaintiff purportedly discussed this situation with

in any pain. (D.I. 22, ex. F at 34) Additionally, these records
are blank as to any medical requests made in May of 2002. (Id.,
ex. G) Rather, it appears that plaintiff made medical requests
from June 2, 2002 through June 4, 2002, but ultimately refused
this medical treatment on June 10, 2002. (Id., ex. G at 3-5)

3

Correctional Officer Sgt. Moody.[7] (D.I. 22, ex. D at 18)  During
the course of this conversation, Sgt. Moody allegedly informed
plaintiff that prison staff had been advised against drinking the
water and "[t]hat the Gander Hill Correctional Facility thought
that [t]he inmates would realize . . . on their own . . . not to
drink the water."  (D.I. 8 at ¶ 9)  Plaintiff continued to drink
from his cell sink and claims to have seen brown and greenish
blue spots on his cup after doing so.  (Id., ex. D at 16)  On the
morning of March 14, 2003, plaintiff again consumed water from
his cell sink, but this time experienced feelings of
lightheadedness and pain in his stomach. (D.I. 8 at ¶ 8)  As a
result, he informed Correctional Officer Justice of his immediate
need to be seen by the medical staff.  (Id.)  Seconds later,
plaintiff passed out, fell and struck his head.  (Id.)  The
nursing staff called a "Code (4)" and plaintiff was taken to the
infirmary for testing.  (Id. at ¶ 9)

     In response to inmate grievances which began in January of
2003, State defendant Dave Williams had the water checked by
maintenance.  (D.I. 29 at 3, 10-11)  According to a memo from
State defendant Dave Williams to Sergeant Moody, dated January
17, 2003, maintenance reported that "the water problem stem[med]

---

[7] State defendants have asserted that they "are without
knowledge or information sufficient to form a belief as to the
truth of the averment...."  (D.I. 21 at ¶ 8)

4

from the Wilmington Water Company who ha[d] been 'back-flushing' its system resulting in discolored water. The water is not contaminated. The water filters have been changed by maintenance, which will alleviate the discoloration." (Id. at 10) When the complaints continued, Department of Correction Chief of Security / Prison Inspections Joe Dudlek supervised the collection of water samples from HRYCI for submission to the City of Wilmington and the Delaware Health and Social Services. (D.I. 42, ex. A, ¶ 4) In a written report dated March 3, 2003, the Water Quality Assistant for the City of Wilmington concluded that "the water sample that was brought to the laboratory from the Gander Hill Prison on [F]riday, February 28, 2003 meets or exceeds all [] standards." (Id., ex. A-1) Additionally, on March 25, 2003, HRYCI received confirmation from Delaware Health and Social Services indicating "that the water meets all primary (health related) maximum contaminant levels (MCL) specified by the Safe Drinking Water Act and the Delaware Regulations for those elements tested." (Id., ex. A-2) In a grievance response dated April 15, 2003, HRYCI inmates were notified of the test results and the conclusion that "there is no further issue to mediate nor Outside Review necessary." (Id., ex. A-4)

## III. STANDARD OF REVIEW

Because State defendants have referred to matters outside the pleadings, their motion to dismiss shall be treated as a

5

motion for summary judgment and disposed of as provided in Rule 56 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12 (b) (6). A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact is in dispute. Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted).

If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995). The mere existence of some evidence in

6

support of the nonmoving party, however, will not be sufficient
for denial of a motion for summary judgment. There must be
enough evidence to enable a jury to reasonably find for the
nonmoving party on that issue. <u>Anderson v. Liberty Lobby, Inc.</u>,
477 U.S. 242, 249 (1986). If the nonmoving party fails to make a
sufficient showing on an essential element of his case with
respect to which he has the burden of proof, the moving party is
entitled to judgment as a matter of law. <u>See</u> <u>Celotex Corp. v.
Catrett</u>, 477 U.S. 317, 322 (1986). In other words, the court
must grant summary judgment if the party responding to the motion
fails to make a sufficient showing on an essential element of his
case with respect to which he has the burden of proof. <u>Omnipoint
Comm. Enters., L.P. v. Newtown Township</u>, 219 F.3d 240, 242 (3d
Cir. 2000) (quoting <u>Celotex</u>, 477 U.S. at 323).

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986).

## IV. DISCUSSION

While the primary concern of the drafters of the Eighth
Amendment was to prevent "physically barbarous punishment," <u>see</u>
<u>Gregg v. Ga</u>, 428 U.S. 153, 170 (1976), the Supreme Court has held
that "the Amendment embodies 'broad and idealistic concepts of
dignity, civilized standards, humanity, and decency.'" <u>Estelle
v. Gamble</u>, 429 U.S. 97, 102 (1976) (quoting <u>Jackson v. Bishop</u>,
404 F.2d 571, 579 (8th Cir. 1968)). Plaintiff argues that State
defendants subjected him to cruel and unusual punishment in

7

violation of the Eighth Amendment by their "deliberate indifference to plaintiff's [medical] needs and his desire to be relieved from pain and suffering" and also by forcing "inmates to shower in and drink [contaminated] water." (Id. at 13,14). Plaintiff contends that State defendants violated his equal protection rights under the Fourteenth Amendment, a clause mandating that "similarly situated individuals be treated alike." See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) (citing Plyler v. Doe, 457 U.S. 202, 216 (1982)). Specifically, plaintiff argues that he was treated differently by being deprived of medical treatment and also by State defendants' "fail[ure] to give notice to all . . . prisoners that the water was determined to be unsafe by state environmental health officials as was done amongst staff." (Id. at 13,15)

## A. State Defendants' Respondeat Superior Defense

State defendants contend that they cannot be held liable for any constitutional violations due to their supervisory positions. (D.I. 42 at 5) The Third Circuit has concluded that a person in a supervisory position cannot be the moving force behind a constitutional violation of a subordinate unless the supervisor has exhibited deliberate indifference to the plight of the person deprived. See Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989) (citing City of Canton, Ohio v. Harris, 489 U.S. 378, 389 (1989); Lipsett v. Univ. of Puerto Rico, 864 F.2d 881, 902 (1st

8

Cir. 1988)). Additionally, "a defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citing Parratt v. Taylor, 451 U.S. 527, 537 n.3 (1981); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1082 (3d Cir. 1976)). Personal involvement can be established through allegations of either personal direction or actual knowledge and acquiescence (deliberate indifference); however, such allegations must be made with particularity. See Rode, 845 F. 2d 1207; Boykins v. Ambridge Area Schl. Dist., 621 F.2d 75, 80 (3rd Cir. 1980) (holding civil rights complaints adequate when time, place and persons responsible are stated); Hall v. Pa. State. Police, 570 F.2d 86, 89 (3d Cir. 1978) (same).

Finally, the Supreme Court has held that supervising officials do not violate the constitutional rights of victims of misconduct unless they have had an affirmative part in the misconduct. See Rizzo v. Goode, 423 U.S. 362, 377 (1976); Commonwealth of Pa. v. Porter, 659 F.2d 306, 336 (3d. Cir. 1981) (requiring that supervising officials play an affirmative role in violating the plaintiff's rights and that an official's misconduct "cannot be merely a failure to act").

Viewing the facts in the light most favorable to the non-moving party, the court finds that plaintiff has failed to

9

provide evidence suggesting personal involvement on behalf of the State defendants with respect to any of his claims. Additionally, plaintiff's allegations have not been made with the requisite particularity. To the court's knowledge, State defendants' alleged involvement is predicated solely on their names being explicitly listed on plaintiff's complaint and implicitly in his third cause of action stating that "Gander Hill['s] entire staff, from the Warden to the lowest ranked Correctional [O]fficer, have long known that the water at the prison is not suitable for human consumption . . . ." (D.I 8 at III and 14). Without specific instances in which State defendants affirmatively participated in withholding medical treatment or in failing to correct the purportedly contaminated water, it can be inferred that plaintiff wishes to hold them liable by virtue of their supervisory positions. Because § 1983 prohibits the imposition of liability on the sole basis of the doctrine of respondeat superior, the court concludes that plaintiff has failed to state a claim upon which relief can be granted. See Durmer v. O'Carroll, 991 F.2d 64, 69 n. 14 (3d Cir. 1993)

## B.  Adequacy of Plaintiff's Medical Care Claim

To state a violation of the Eighth Amendment right to adequate medical care, plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to

10

serious medical needs." Estelle, 429 U.S. at 106; accord White
v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990). Plaintiff must
demonstrate that:  (1) he had serious medical needs; and (2) the
State defendants were aware of the needs and were deliberately
indifferent to them. See West v. Keve, 571 F.2d 158, 161 (3d
Cir. 1978); see also Boring v. Kozakiewicz, 833_ F.2d 468, 473
(3d Cir. 1987). Either actual intent or recklessness will afford
an adequate basis to show deliberate indifference. See Estelle,
429 U.S. at 105.

The seriousness of a medical need may be demonstrated by
showing that the need is "'one that has been diagnosed by a
physician as requiring treatment or one that is so obvious that a
lay person would easily recognize the necessity for a doctor's
attention.'" Monmouth County Corr. Inst. Inmates v. Lanzaro, 834
F.2d 326, 347 (3d Cir. 1987) (quoting Pace v. Fauver, 479 F.
Supp. 456, 458 (D.N.J. 1979)). Moreover, "where denial or delay
causes an inmate to suffer a life-long handicap or permanent
loss, the medical need is considered serious." Id.

As to the second requirement, an official's denial of an
inmate's reasonable requests for medical treatment constitutes
deliberate indifference if such denial subjects the inmate to
undue suffering or a threat of tangible residual injury. Id. at
346. Deliberate indifference may also be present if necessary
medical treatment is delayed for non-medical reasons, or if an

11

official bars access to a physician capable of evaluating a
prisoner's need for medical treatment. Id. at 347. However, an
official's conduct does not constitute deliberate indifference
unless it is accompanied by the requisite mental state.
Specifically, "the official [must] know . . . of and disregard
. . . an excessive risk to inmate health and safety; the official
must be both aware of facts from which the inference can be drawn
that a substantial risk of serious harm exists, and he must also
draw the inference." Farmer v. Brennan, 511 U.S. 825, 837
(1994). While a plaintiff must allege that the official was
subjectively aware of the requisite risk, he may demonstrate that
the official had knowledge of the risk through circumstantial
evidence and "a fact finder may conclude that a[n] . . . official
knew of a substantial risk from the very fact that the risk was
obvious." Id. at 842.

Applying this framework to the issue at bar, the court finds
no evidence suggesting that State defendant Dave Williams,
Security Superintendent at HRYCI, was personally involved in, or
had knowledge of, the alleged incident. In fact, the complaint
never mentions his name, other than listing his job title. (D.I.
8 at III) Consequently, plaintiff has failed to raise a genuine
issue of material fact regarding deliberate indifference on the
part of Dave Williams and plaintiff's claim of inadequate medical
care against this State defendant is denied.

12

As to State defendant Raphael Williams, Warden of HRYCI, plaintiff has presented evidence indicating his awareness of the incident.  (D.I. 22, ex. A,B,C)  Specifically, plaintiff has offered two letters addressed to State defendant Raphael Williams, which indicate the circumstances surrounding his injury, the treatment he was currently receiving, as well as his desire to have an magnetic resonance image ("MRI").  (Id., ex. A-B.)  Additionally, plaintiff presented Raphael Williams' response to these letters.  (Id., ex. C)  Dated August 30, 2004, the same day as plaintiff's second letter, Williams informed plaintiff that, "[y]our recent correspondence to this office has been forwarded to Irv Fish, Health Care Services Administrator, for any action or response deemed appropriate."  (Id.)  While these documents undeniably prove awareness of the issue, they do not prove the requisite knowledge and disregard of excessive risk as required by Farmer v. Brennan.  Rather, State defendant Raphael Williams' response indicates the exact opposite of disregard.  Instead of deliberately ignoring plaintiff's complaints, he immediately acted by forwarding the information to Irv Fish, Health Care Services Administrator, for appropriate action.  In light of defendant's actions, it cannot be said that there was an active disregard of an excessive risk and, thus, plaintiff's

13

claim of inadequate care against this defendant is denied.[8]

## C. Plaintiff's Contaminated Water Claim

As stated by the Supreme Court in Helling v. McKinney, "it is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eight Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993). Accordingly, it is well established that the Eighth Amendment requires prison officials to provide "humane conditions of confinement." Farmer, 511 U.S. at 832. Specifically, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take 'reasonable measures to guarantee the safety of inmates.'" Id. (quoting Hudson v. Palmer, 468 U.S. 517, 526-527 (1984)).

In order to succeed on an Eighth Amendment claim, a prisoner must satisfy two requirements, one objective and the other subjective. Helling, 509 U.S. at 35. If the plaintiff fails to prove either prong of this test, a finding in favor of the defendant is warranted. As to the objective factor, a prisoner must demonstrate that he was personally exposed to unreasonably high levels of the element in question. Id. This inquiry "involves more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such

---

[8]Because plaintiff has failed to prove that State defendants were deliberately indifferent to his medical needs, the court will not address whether plaintiff had a serious medical need.

injury to health will actually be caused by exposure" to the particular element. Id. at 36. "It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwilling to such a risk." Id. (emphasis in original).

Turning to the subjective element, a prisoner must demonstrate "deliberate indifference" on the part of prison authorities in exposing the prisoner to an unreasonable risk of serious harm. Id. As stated above, a finding of deliberate indifference cannot exist, absent proof of the requisite mental state. Farmer, 511 U.S. 836. Specifically, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference."  Id. at 837.  Likewise, "prison officials who lacked knowledge of the risk cannot be said to have inflicted punishment."  Id. at 844.  Similarly, those "who actually knew of a substantial risk to inmate health or safety may be found free of liability if they responded reasonably to the risk, even if harm ultimately was not averted." Id.

In light of this precedent, plaintiff has failed to prove
either the objective or subjective elements of his Eighth
Amendment claim.  With respect to the objective portion,
plaintiff has proffered no evidence establishing that he was
exposed to unreasonably high levels of contaminated water.  While
plaintiff asserts that he fainted shortly after he drank the
allegedly contaminated water, test results from both the City of
Wilmington and the Delaware Health and Social Services indicated
that the water levels were in accordance and, in some cases,
exceeded requisite standards.  Accordingly, the burden of proof
shifted to the plaintiff to come forward with evidence regarding
the presence of contaminants in the water at HRYCI.  Because no
such evidence has been presented, the court finds no genuine
issue for trial.

Even assuming that plaintiff had demonstrated a genuine
issue of material fact regarding his exposure to contaminated
water, he has made no showing that such exposure violates
contemporary standards of decency.  As stated by the Seventh
Circuit, "many Americans live under conditions of exposure to
various contaminants."  Carroll v. DeTella, 255 F.3d 470, 472
(7th Cir. 2001).  Thus, "the Eighth Amendment does not require
prisons to provide prisoners with more salubrious air, healthier
food, or cleaner water than are enjoyed by a substantial number
of free Americans."  Id.  (citing McNeil v. Lane, 16 F.3d 123,

16

125 (7th Cir. 1993); Givens v. Jones, 900 F.2d 1229, 1234 (8th Cir. 1990))  Such logic is consistent with the requirement of humane conditions of confinement.

As to the subjective factor, the court finds that plaintiff has presented no evidence from which a fact finder could conclude that State defendants both were aware of a substantial risk to inmate health or safety and then affirmatively disregarded this risk.  Even though State defendants knew of the inmates' concern about the water conditions, there is nothing to suggest that State defendants knew that the water posed serious health risks.[9] (D.I. 29 at 1, 4, 10)  To the contrary, maintenance at HRYCI, the City of Wilmington, and Delaware Health and Social Services all informed State defendants that the water was not contaminated. (Id., at 10, 12-13)  In light of these findings, and absence of evidence indicating otherwise, it cannot be said that State defendants had the requisite awareness for a finding of deliberate indifference.

Additionally, the record is devoid of any evidence proving that State defendants affirmatively disregarded serious health

---

[9]The court recognizes that plaintiff relies on his conversation with Sergeant Moody to show that employees knew of a hazardous condition in the water.  However, in light of the memorandum sent by State defendant Dave Williams on January 17, 2003 to Sergeant Moody indicating the healthfulness of the water as well as test results sent from the City of Wilmington on March 3, 2003 evidencing the same prior to the alleged conversation, the court does not credit plaintiff's allegation of his conversation with Sergeant Moody.  (D.I. 29 at 10, 12)

17

risks. While evidence shows that inmates began grieving about the water conditions in the beginning of January of 2003, State defendant Dave Williams quickly responded and had the water checked by maintenance. When complaints by the inmates continued, Joe Dudlek, Chief of Security at the Department of Correction, supervised the collection of water samples from the facility for submission to the City of Wilmington and the Delaware Division of Health and Services. Additionally, the first test results indicating the safety of the water were received by HRYCI on or about March 3, 2003 - three days after plaintiff's first contaminated water grievance, nine days before plaintiff's conversation with Sergeant Moody and eleven days before plaintiff fainted. In light of this time-line, it cannot be said that State defendants were deliberately indifferent. Consequently, plaintiff has failed to prove a genuine issue of material fact as to the issue of deliberate indifference. Accordingly, plaintiff has failed to state a claim with respect to conditions of confinement under the Eighth Amendment.

## V. CONCLUSION

For the reasons stated above, State defendants' motion for summary judgment is granted. An appropriate order shall issue.

18